No. 24-7706

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

JONATHAN RUSOFF and JOSEPH GAMBINO, on behalf of themselves and all
others similarly situated,

*Plaintiffs and Appellees,*

*v.*

THE HAPPY GROUP, INC., a corporation;
and DOES 1 through 10, inclusive;

*Defendant and Appellant.*

On Appeal from an Order of the United States District Court for the Northern
District of California,
Case 3:21-cv-08084-AMO
Honorable Araceli Martínez-Olguín

## APPELLANT'S OPENING BRIEF

**VENABLE LLP**
Amit Rana
arana@venable.com
Rita Mansuryan
rmansuryan@venable.com
101 California Street, Suite 3800
San Francisco, CA 94111
Telephone: (415) 653-3750
Facsimile: (415) 653-3755

**VENABLE LLP**
Nicholas M. DePalma
nmdepalma@venable.com
1850 Towers Crescent Plaza, Suite 400
Tysons, VA 22182
Telephone: (703) 760-1600
Facsimile: (703) 821-8949

**Attorneys for Defendant and Appellant,
The Happy Group, Inc.**

## <u>CORPORATE DISCLOSURE STATEMENT</u>
## (Fed. R. App. P. 26.1)

Petitioner The Happy Group, Inc. is a nongovernmental corporate party whose parent company is Polzeath Surf Limited, a non-public company. No publicly held corporation owns 10% or more of The Happy Group, Inc.

Dated: April 9, 2025               VENABLE LLP

By:   */s/ Amit Rana*

       Amit Rana

   Counsel for Defendant-Appellant
      The Happy Group, Inc.

# <u>CONTENTS</u>

INTRODUCTION ................................................................................1

JURISDICTIONAL STATEMENT ........................................................5

QUESTION PRESENTED ....................................................................5

STATEMENT OF THE CASE................................................................5

I.     There is no industry standard for free-range or pasture raised eggs. ..............5

II.    Happy Egg's hens are free range on 8+ acres of pasture. ..............................8

III.   Plaintiffs testify that they were not deceived. ...............................................11

IV.   Plaintiffs' industry expert admits he is not an expert in egg standards.........14

V.    Plaintiffs' survey expert fails to test Plaintiffs' theory...................................15

VI.   Happy Egg's survey expert tests Plaintiffs' theory and finds no deception. 17

VII.  Plaintiffs move for class certification...........................................................17

VIII. The district court recognizes that common claims do not predominate as to deception, but certifies two classes anyway. ...................................................19

IX.   This Court grants interlocutory review..........................................................23

SUMMARY OF ARGUMENT ............................................................23

ARGUMENT ......................................................................................24

I.     Standard of review ...........................................................................................24

II.    The district court committed legal error by certifying a class after finding that Plaintiffs' evidentiary failures precluded a finding of predominance....25

       A.    The district court correctly found that Plaintiffs failed to establish predominance as to deception. .........................................................28

       B.    The district court erred in certifying the classes. .................................32

CONCLUSION ...................................................................................36

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*,
  No. ML 13-2438, 2018 WL 11354864 (C.D. Cal. Jan. 24, 2018)......................16

*In re 5-Hour Energy Mktg. and Sales Pracs. Litig.*,
  No. ML 13-2438 PSG, 2017 WL 2559615 (C.D. Cal. June 7, 2017) ...............29

*Alcantar v. Hobart Serv.*,
  800 F.3d 1047 (9th Cir. 2015) ....................................................................26

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013)....................................................................................25

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)....................................................................................28

*Astiana v. Kashi Co.*,
  291 F.R.D. 493 (S.D. Cal. 2013) ................................................................30

*B.K. v. Snyder*,
  922 F.3d 957 (9th Cir. 2019) ......................................................................24

*Bowerman v. Field Asset Servs.*,
  60 F.4th 459 (9th Cir. 2023) .......................................................................32

*Bustamante v. KIND, LLC*,
  100 F.4th 419 (2d Cir 2024) .......................................................................16

*C.f., Navellier v. Sletten*,
  262 F.3d 923 (9th Cir. 2001) ......................................................................35

*Castillo v. Bank of Am., NA*,
  980 F.3d 723 (9th Cir. 2020) ......................................................................33

*Chamberlan v. Ford Motor Co.*,
  402 F.3d 952 (9th Cir. 2005) ......................................................................23

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)...............................................................................*passim*

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011)................................................................28

*Ferreras v. Am. Airlines, Inc.*,
    946 F.3d 178 (3d Cir. 2019) ...............................................26

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2008) ...............................................28

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) ............................................25

*Lozano v. AT & T Wireless Servs., Inc.*,
    504 F.3d 718 (9th Cir. 2007) ..............................................34

*McMorrow v. Mondelez Int'l, Inc.*,
    No. 17-cv-2327, 2020 WL 1157191 (S.D. Cal. Mar. 9, 2020)..........................16

*Mevorah v. Wells Fargo Home Mortg.*,
    571 F.3d 953 (9th Cir. 2009) ..............................................25

*Moore v. Mars Petcare U.S., Inc.*,
    No. 16-cv-07001-MMC, 2024 WL 4336602 (N.D. Cal. Sept. 27,
    2024) ..................................................................................29

*O'Bannon v. N.C.A.A.*,
    7 F. Supp. 3d 955 (N.D. Cal. 2014), *aff'd in part and rev'd in part*
    *on other grounds*, 802 F.3d 1049 (9th Cir. 2015)............................16

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) (en banc), *cert. denied*, 2022 WL
    16909174 (Nov. 14, 2022)..................................................24

*Orlander v. Staples, Inc.*,
    802 F.3d 292 (2d Cir. 2015) ...............................................29

*Pardini v. Unilever U.S., Inc.*,
    No. 13-cv-01675, 2020 WL 6821071 (N.D. Cal. July 10, 2020)......................16

*Parko v. Shell Oil Co.*,
    739 F.3d 1083 (7th Cir. 2014) ............................................27

*Reid v. Johnson & Johnson*,
   780 F.3d 952 (9th Cir. 2015) ...................................................................29

*Ruiz Torres v. Mercer Canyons Inc.*,
   835 F.3d 1125 (9th Cir. 2016) .................................................................27

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) .................................................................30

*Strumlauf v. Starbucks*,
   No. 16-cv-01306, 2018 WL 306715 (N.D. Cal. Jan. 5, 2018) ...........16

*Thorogood v. Sears, Roebuck & Co.*,
   547 F.3d 742 (7th Cir. 2008) .................................................29, 30, 31

*Townsend v. Monster Bev. Corp.*,
   303 F. Supp. 3d 1010 (C.D. Cal. 2018) ...............................................30

*True Health Chiropractic Inc. v. McKesson Corp.*,
   No. 13-cv-02219-HSG, 2021 WL 4818945 (N.D. Cal. Oct. 15,
   2021) .........................................................................................................28

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016).........................................................5, 25, 26, 32

*Van v. LLR, Inc.*,
   61 F.4th 1053 (9th Cir. 2023) .................................................................32

*Vizcarra v. Unilever U.S., Inc.*,
   339 F.R.D. 530 (N.D. Cal. 2021)...........................................................16

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)..................................................................................27

*Walker v. Life Ins. Co. of the Sw.*,
   953 F.3d 624 (9th Cir. 2020) .............................................................25, 26

*White v. Symetra Assigned Ben. Serv.*,
   104 F.4th 1182 (9th Cir. 2024) .....................................................*passim*

*Whiteside v. Kimberly Clark Corp.*,
   108 F.4th 771 (9th Cir. 2024) .................................................................29

*Williams v. Apple, Inc.*,
    338 F.R.D. 629 (N.D. Cal. 2021)................................................................28

*Yokoyama v. Midland Nat. Ins. Co.*
    594 F.3d 1087 (9th Cir. 2010) ................................................................24

*Zinser v. Accufix Rsch. Inst., Inc.*,
    253 F.3d 1180 (9th Cir.), *opinion amended on denial of reh'g*, 273
    F.3d 1266 (9th Cir. 2001) ................................................................34

**Federal Statutes**

28 U.S.C. § 1292(e) ................................................................5

**State Statutes**

Cal. Bus. & Prof. Code
    § 349................................................................12
    § 17200, *et seq.* ................................................................12
    § 17500, *et seq.* ................................................................12

Cal. Civil Code
    § 1750, *et seq.* ................................................................12

California Commercial Code
    § 2313................................................................12
    § 2314................................................................12

California Consumer Legal Remedies Act ................................................................12

California False Advertising Law ................................................................12

California Unfair Competition Law................................................................12

New York General Business Law
    § 349................................................................12
    § 350................................................................12

New York U.C.C. § 2-313 ................................................................12

**Rules**

Fed. R. App. P. 5(c)(1)................................................................37

Fed. R. App. P. 32(a)(5) ................................................................. 37

Fed. R. App. P. 32(a)(6) ................................................................. 37

Fed. R. App. P. 32(f) ...................................................................... 37

Fed. R. Civ. P. 23 ................................................................... *passim*

Fed. R. Civ. P. 23(a) ............................................................... 25, 28

Fed. R. Civ. P. 23(a)(2) ................................................................. 26

Fed. R. Civ. P. 23(b) ...................................................................... 32

Fed. R. Civ. P. 23(b)(3) ......................................................... *passim*

Fed. R. Civ. P. 23(f) ................................................................. 5, 23

## INTRODUCTION

This appeal arises from the district court's decision to certify two classes of consumers in California and New York who purchased eggs from Appellant The Happy Group, Inc. ("Happy Egg") labeled as "FREE RANGE Pasture Raised on Over 8 Acres." The proposed class period is May 1, 2019 to December 31, 2021.

Plaintiffs' theory is that although this label is literally true (*i.e.*, Happy Egg's hens do range on over 8 acres of pasture), it is nevertheless deceptive in violation of California and New York consumer protection laws. Plaintiffs allege it is deceptive because Happy Egg did not provide enough space per bird.

It is undisputed that—at the time of the purported classes—Happy Egg provided at least 21.8 square feet of pasture per bird (at least 8 acres total), mostly on rolling green hills on farms nestled in the foothills of the Ozark mountains. Plaintiffs alleged that Happy Egg should have provided 108.9 square feet of pasture per bird on rotating pastures (40 acres total). This would have required Happy Egg to have five separate eight acre lots per farm, and then to rotate them— so that each hen would still have access to 21.8 square feet of pasture per hen.

Plaintiffs' theory of rotated pasture is not required by state or federal regulation, retailers, or farmers. It is required, however, if an egg company advertises itself to be certified as "pasture raised" by the American Humane Association ("AHA") or Humane Farm Animal Care ("HFAC" or "Certified

Humane"). Plaintiffs defined these certifications, or at least the requirements that accompany such certifications, to be the "Hen Welfare Standards."

The problem for Plaintiffs is that Happy Egg did not claim to be certified as "pasture raised" by either such nonprofit organization. Therefore, to succeed on class certification, Plaintiffs had to prove that they could establish with common evidence that reasonable consumers interpret "pasture raised" to mean 108.9 square feet per bird (40 acres) on rotated pastures, or at least compliance with one of Plaintiffs' two favored certifications: AHA or HFAC.

Plaintiffs sought to do this but fell short. Plaintiff Rusoff testified at his deposition that he knew to look for certifications on egg cartons—and that he knew that cartons without a "pasture raised" certification were not certified. 3-ER-360-61. Plaintiff Gambino testified that "pasture" simply meant a "big, open field" and that egg producers do not use the word "pasture" to mean the same thing. 3-ER-328:20-22, 341:7-11. Gambino further testified that he had never heard of Certified Humane, and that nothing on Happy Egg's cartons made him think the eggs were AHA-certified pasture raised. 3-ER-334:2-4, 338:17-21. Finally, Gambino watched a video of a Happy Egg's farm, and testified that he considered eggs from such a farm to be pasture raised. 3-ER-342, 523.

This testimony left Plaintiffs' case on life support. Plaintiffs had to marshal common evidence of deception—that Happy Egg's labels implied compliance with

one of two certifications—after each of the two Named Plaintiffs testified that they did not. Plaintiffs could have (and should have) dismissed their case at that point. Instead, Plaintiffs sought to fill this hole with two experts: an industry expert and a survey expert.

These efforts fared poorly. First, Plaintiffs' industry expert, Craig Morris, testified at deposition that he is "not an expert in egg standards," that he is "not an expert in the development of pasture-raised standards," and that he is "not a survey expert." 6-ER-927:1-7, 956:8-11, 933:17-23. Morris did not conduct a survey, interview consumers, or collect consumer data. 6-ER-933-34, 935:5-15, 940:9-11. He admitted at deposition that he did not know what consumers think "pasture" or "free range" mean. 6-ER-952:19-21, 953:18-20. Instead, Morris googled things on the internet and visited local grocery stores in Seattle, Washington (outside the class area), and admitted this was "[a]bsolutely not" intended to be a scientific process but was "for [his] own personal purposes," was not representative, and was not like "scientifically designed studies." 6-ER-931:15-23. The district court struck his opinion. 1-ER-8-12.

Second, Plaintiffs hired J. Michael Dennis, a survey expert who has been stricken by district courts in other consumer deception cases. Dennis conducted a survey, but did not ask a single question about how consumers understood "Pasture Raised." *See* 4-ER-586-785. Dennis created a second stimulus that removed

"Pasture Raised on Over 8 Acres." 4-ER-603-06, ¶ 64. That left him with two egg cartons. One said, "FREE RANGE." And one said, "FREE RANGE Pasture Raised on Over 8 Acres." 4-ER-603-06, ¶ 64. Then he asked participants which ones were "pasture raised." 4-ER-608-09, ¶ 69. This turned what could have been a survey into a reading comprehension quiz. It did not support Plaintiffs' theory— whether consumers understand "FREE RANGE Pasture Raised on Over 8 Acres" to mean compliance with the space requirements in one of two certifications.

The district court found that Plaintiffs failed to carry their burden. The district court recognized that Plaintiffs' "theory of liability is that pasture raised eggs have an objective definition under the Hen Welfare Standards (i.e., the industry standards)" and accordingly, "Plaintiffs' theory depends on the existence of an industry standard." *See* 1-ER-21-22. But Plaintiffs failed to make any showing that common evidence could prove that reasonable consumers interpreted "pasture raised" to imply compliance with Plaintiffs' Hen Welfare Standards. "Because that industry standard anchors their theory of deception, the failure to provide survey evidence measuring deception by reference to that industry standard **precludes a finding of predominance**." 1-ER-22 (emphasis added).

Plaintiffs' failure to present any common evidence of deception rendered the central question in their case an individualized inquiry inappropriate for class certification. Nonetheless, the district court disregarded its own finding and

certified two classes despite the required "rigorous" analysis of Rule 23(b)(3)'s predominance requirement. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). Accordingly, this Court should reverse.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under 28 U.S.C. § 1292(e) and Federal Rule of Civil Procedure 23(f). The district court granted class certification on September 27, 2024. *See generally*, 1-ER-2-28. This Court granted Happy Egg's Petition for Interlocutory Appeal on December 20, 2024. 5-ER-787.

## QUESTION PRESENTED

Whether Rule 23 permits certification of a class in a consumer deception case where the district court correctly found that individualized inquiries regarding the central question of deception predominate over common questions?

## STATEMENT OF THE CASE

I.    **There is no industry standard for free-range or pasture raised eggs.**

There are many different types of eggs sold in the United States. USDA promulgates egg grades (Grade AA, A, and B) and weight classes (peewee, small, medium, large, extra-large, and jumbo).[1] Eggs are also advertised by color (white,

---

[1] https://www.ams.usda.gov/sites/default/files/media/Shell_Egg_Standard%5B1%5D.pdf.

brown), and sometimes with reference to the conditions of the laying hens. These conditions include cage free, organic, free-range, and pasture raised. There are other types, but these are enough for the purposes of this appeal.

Most egg laying hens in the United States are raised in cage systems.[2] These are called battery cages. Cage systems consist of many small wire cages inside of the henhouse. They are stacked one on top of the others and in rows. There are a few hens in each cage with manure pits below the cages.[3] The hens do not leave the cages. Eggs from these hens would come in cartons that say USDA Grade A, Large, White, but would not say cage free, free range, or pasture raised.

"Cage free" eggs come from hens that likewise receive zero access to the outdoors, but the cages are removed.[4] Cage free hens may never go outdoors, but at least they are not in cages.

Then there are "free-range" or "pasture raised" eggs. No national standards exist for these categories. 6-ER-1039, ¶ 22. For many years, including during the proposed Class Period at issue, people (including the USDA) used these terms interchangeably. *See* 6-ER-967-68, ¶ 21. Many farmers and retailers also use the term "pasture raised" literally – i.e., hens raised on a pasture. 6-ER-964-981, ¶¶ 14-

---

[2] https://unitedegg.com/facts-stats/#:~:text=U.S.%20Egg%20Production%20and%20Hen.

[3] https://uepcertified.com/wp-content/uploads/2021/08/Hen-Housing-Diagrams.pdf.

[4] *Id*.

38. This is especially true for farmer's markets and food cooperatives. 6-ER-965, 973-74, ¶¶ 15, 29-31. These farmers do not pay for nonprofit certifications from third-party organizations. 6-ER-965, 973-74, ¶¶ 15, 29-31. But there are organizations who promulgate their own standards, and an egg producer can pay to participate in their programs.

For example, AHA is a nonprofit that charges egg producers to participate in its certification program. 6-ER-964-65, 970-71, ¶¶ 14, 25-26. For a free-range certification, AHA requires 21.8 square feet per hen and permits rotation of the range. 2-ER-61. For pasture raised, AHA requires 108.9 square feet per hen and permits (but does not require) pasture rotation (only 27.2 square feet per hen is required if pasture rotation is used). 2-ER-62.

HFAC is another nonprofit that charges egg producers to participate in its certification program. 6-ER-964-65, 970-71, ¶¶ 14, 25-26. For a free-range certification, HFAC requires 2 square feet of any outdoor space (even a gravel lot). 2-ER-189. For Pasture Raised, HFAC requires a total of 108 square feet per hen and requires rotation (but requires 21.8 square feet per hen during rotation). 6-ER-975-76, ¶ 32. In addition to space requirements during rotation, HFAC differs from the AHA standards on the size and location of exit areas from the house for the hens and how resources like shade, shelter and water are provided and distributed on the pasture. 6-ER-975-76, ¶ 32.

Global Animal Partnership ("GAP") is yet another nonprofit organization from which egg producers can purchase the right to label eggs Pasture Raised with that organization's certification. Many prominent organizations promote GAP, including the American Society for the Prevention of Cruelty to Animals ("ASPCA"). 6-ER-979, ¶ 36; 6-ER-911-919. For a pasture raised certification, GAP's program permits (but does not require) rotation of pastures and requires a minimum of 5 square feet per hen at any one time if rotated, or 10 square feet per hen if not rotated. 2-ER-241 (Requirement 5.2.7).

Many retailers also have their own standards. For example, to sell "Pasture Raised" eggs at Whole Foods, the "outdoor area to which birds have access must be large enough to be sustained as grassland or rangeland" but there is no specific square footage requirement. 2-ER-292 (§ 8.3.3). It is undisputed that Happy Egg far exceeds the pasture space and outdoor vegetation quality requirements for the Whole Foods standard for pasture raised. 6-ER-976-78, ¶ 34.

## II. <u>Happy Egg's hens are free range on 8+ acres of pasture.</u>

Happy Egg, like many others, has its own standards for laying hens. Happy Egg provides at least 8 acres of pasture per farm (at least 21.8 square feet per hen), which is covered in abundant vegetation and play kits for the birds. Happy Egg provides rolling green pastures on which hens can forage and exhibit natural behavior.

Happy Egg never claimed to be certified by AHA, HFAC, GAP or any other organization or retailer as "pasture raised" and never used the AHA or HFAC or any other certifying organization's logo for that claim. Although Happy Egg does not use nonprofit certification logos for pasture raised, its hen raising practices meet the pasture space requirements to be certified as pasture raised by Whole Foods, GAP, and others. This is because Happy Egg's hens are literally raised on over 8 acres of pasture. It is undisputed that Happy Egg did not, at the time of the proposed Class Period, meet the AHA or HFAC pasture raised certification requirements.

For ease of reference, the chart on the next page compares the types of hen raising practices and available certifications.

| | Caged | Cage Free | HFAC Free Range | AHA Free Range | Animal Welfare Approved | Whole Foods Pasture Raised | GAP Pasture Raised | Happy Egg | HFAC Pasture Raised | AHA Pasture Raised |
|---|---|---|---|---|---|---|---|---|---|---|
| **Battery cages** | Yes | No | No | No | No | No | No | No | No | No |
| **Hens go outside** | No | No | Yes | Yes | Yes | Yes | Yes | Yes | Yes | Yes |
| **Type of outdoor area** | N/A | N/A | Can be gravel lot | Appropriate cover of living vegetation as climate allows | Pasture (no more than 20% of ranging and foraging area denuded) | Pasture (50% vegetative cover) | Pasture (50% vegetative cover within 200 ft. of henhouse) | Pasture (60% vegetative cover for new flock; abundant play kits; irrigation lines to ensure access to water) | Pasture (substantial cover of living vegetation) | Pasture (consist mainly of living vegetation) |
| **Outdoor space** | N/A | N/A | 2 sq. ft. per hen | 5.45 sq. ft. per hen at a time (out of 21.8 sq. ft. per hen total that can be rotated) | 4 sq. ft. per hen | Hens must be able to run, flap wings, scratch, and peck without being obstructed by other birds, and area must be large enough to be sustained as grassland or rangeland | 5 sq. ft per hen if space rotated; 10 sq. ft. per hen if space not rotated | 21.8 sq. ft. per hen at all times | 21.8 sq. ft. per hen at a time (out of 108.9 sq. ft. per hen total that must be rotated) | 27.2 sq. ft. per hen at a time (out of 108.9 sq. ft. per hen total that can be rotated) |

10

Sources: 6-ER-920-22, 957-1000; 2-ER-33-167, 168-212, 213-74, 275-307;

https://agreenerworld.org/certifications/animal-welfare-approved/;

https://uepcertified.com/wp-content/uploads/2021/08/Hen-Housing-Diagrams.pdf.

Accordingly, during the proposed class period, Happy Egg truthfully

advertised its eggs as:





*See* 1-ER-2-3; 3-ER-522.

## III.  <u>Plaintiffs testify that they were not deceived.</u>

The two purported Class Plaintiffs are consumers from California and New

York who contend Happy Egg's labels violated California and New York law. 1-

ER-2, 4. They allege claims for violations of (1) the California Consumer Legal Remedies Act, Cal. Civil Code § 1750, *et seq.*, (the "CLRA"), (2) California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, (the "FAL"), (3) the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, (the "UCL"), (4) New York General Business Law ("GBL") § 349, (5) New York GBL § 350, (6) breach of express warranty under California Commercial Code § 2313, (7) breach of express warranty under New York U.C.C. § 2-313, (8) breach of implied warranty under California Commercial Code § 2314, and (9) intentional misrepresentation. 1-ER-4. Plaintiffs attempt to bring these claims on behalf of themselves and two classes of purported similarly situated consumers.[5]

As the district court recognized, Plaintiffs' "theory of liability is that pasture raised eggs have an objective definition under the Hen Welfare Standards (i.e., the industry standards), and accordingly, the Pasture Raised claim deceived consumers. Therefore, the salient analysis is whether the Hen Welfare Standards are the industry standard, and whether the reasonable consumer believes the [eggs] are pasture raised eggs." 1-ER-21. To that end, Plaintiffs argue the "industry standard" for "pasture raised" eggs is a combination of two different nonprofit certifications: AHA and HFAC/Certified Humane, requiring 108 square feet of

---

[5] Plaintiffs did not seek to certify their California breach of implied warranty claim and stated that they would amend the complaint to omit this claim. 6-ER-1018, n.5.

space per hen. 6-ER-1009. Plaintiffs interchangeably refer to these market certifications as the "Hen Welfare Standards" and the "industry standards."

Despite their allegations, Plaintiffs testified that they were not deceived. Plaintiff Rusoff testified that he did not know about either the AHA or HFAC standards. 3-ER-354:22-24, 355:19-23, 356:22-25, 362:16-23, 364-65, 368-69. Rusoff defined a "pasture" as "traditional farming, you know, able to roam the land and have a good diet, like eat properly, green grass, and like it says here, no pesticides, no hormones, that type of diet, no antibiotics." 3-ER-358:8-19. Rusoff also testified that cartons that do not have certifications are not certified. 3-ER-360-61.

Plaintiff Gambino testified that "pasture raised" meant "fully raised outside," even sleeping outside, unless there is bad weather. 3-ER-321-22, 323:13-23, 326:11-15. Gambino further testified that pasture raised farms should be eight acres, but he did not know how many hens per acre, and he (incorrectly) believes that AHA requires each hen to have 108 square feet at all times. 3-ER-324-25, 329-330, 331:2-8. Gambino also testified that "pasture" simply means a "big, open field." 3-ER-341:7-11. Gambino acknowledged that egg producers do not use pasture raised to mean the same thing. 3-ER-328:20-22. And further that he never heard of the Certified Humane standard. 3-ER-334:2-4. Gambino testified that nothing on Happy Egg's cartons made him think the eggs were AHA-certified. 3-

ER-338:17-21. Finally, after seeing a video of Happy Egg's farms, Gambino

testified that he considered eggs from such a farm to be pasture raised. 3-ER-342,

523.

This testimony created serious issues for Plaintiffs' theory, both on the

merits and in connection with class certification. It begged the question of how

Plaintiffs could establish common evidence that Happy Egg's advertising was false

based on the failure to comply with an uncited certification when each Plaintiff

testified with their own individualized understanding. Plaintiffs attempted to

overcome this issue with two experts. Their efforts fell short.

## IV. Plaintiffs' industry expert admits he is not an expert in egg standards.

Plaintiffs proffered the expert opinion of Dr. Craig Morris. Morris is an

expert on Wild Alaskan Pollock. He admitted at deposition that he is "not an expert

in egg standards," that he is "not an expert in the development of pasture-raised

standards," and that he is "not a survey expert." 6-ER-927:1-7, 956:8-11, 933:17-

23. Morris did not conduct a survey, interview consumers, or collect consumer

data. 6-ER-933-34, 939:5-15, 940:9-11. He did not know what consumers think

"pasture" or "free range" mean. 6-ER-952:19-21, 953:18-20. Instead, Morris

reviewed case documents provided by counsel, googled things on the Internet, and

visited local grocery stores in Seattle (which is beyond the two classes of

California and New York consumers). 6-ER-1043, ¶¶ 34-35. Based on those

actions, Morris opined that "the prevailing consumer expectation is that an egg producer making a free-range or pasture-raised claim is adhering to the commonly accepted standards pertaining to such claims as set by the AHA or HFAC." 6-ER-1044, ¶ 37.

## V.    <u>Plaintiffs' survey expert fails to test Plaintiffs' theory.</u>

Plaintiffs next proffered Dr. J. Michael Dennis. Dennis conducted a consumer survey to argue that "the Pasture Raised claim also deceived the reasonable consumer." 3-ER-568. Dennis's survey, however, did not ask a single question or elicit a single answer regarding how participants understand the term "Pasture Raised" or anything else on the carton. Instead, Dennis conducted a survey in which he showed one set of respondents a carton with "Free Range" and another set of respondents a carton with "Free Range – Pasture Raised on Over 8 Acres" and then asked which cartons had eggs that were pasture raised. *See* 4-ER-603-609, ¶¶ 64-69. It was a reading test. The only data Dennis collected is that most respondents who viewed the carton containing the words "PASTURE RAISED" selected the answer choice that "these are pasture-raised eggs." But the data produced gave no indication as to whether a single respondent understood "pasture-raised eggs" to refer to any particular standard or definition.

Dennis also dispensed with any adherence to generally accepted principles of survey design to test consumer perception by providing only multiple-choice

questions (i.e., he included no open-ended questions), suffered from significant

demand effects to lead respondents to the response desired by Plaintiffs, and failed

to include appropriate controls.[6] Dennis then opined that a reasonable consumer

perceived the carton to convey that the Products are pasture raised eggs.

---

[6] Courts regularly strike or criticize Dennis's surveys for these reasons. *See
Bustamante v. KIND, LLC*, 100 F.4th 419, 430 (2d Cir 2024) (affirming decision
decertifying class because "even ignoring [Dennis's] … methodological failures,
[his surveys] provide[d] no useful information about how a reasonable consumer
understands [the statement]") (internal citations omitted); *see also Vizcarra v.
Unilever U.S., Inc.*, 339 F.R.D. 530, 546 (N.D. Cal. 2021) (declining to adopt
Dennis's opinions because "Dr. Dennis' consumer perceptions survey did not
specifically test the effect of the Vanilla Representations on consumers
expectations or beliefs"); *Pardini v. Unilever U.S., Inc.*, No. 13-cv-01675, 2020
WL 6821071, at *1 (N.D. Cal. July 10, 2020) (striking Dennis's opinions because
they did not address the plaintiff's theory); *McMorrow v. Mondelez Int'l, Inc.*, No.
17-cv-2327, 2020 WL 1157191, at *5-9 (S.D. Cal. Mar. 9, 2020) (Dennis's survey
did not focus on the challenged word and was inconsistent with the plaintiffs'
theory of liability); *In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, No. ML 13-
2438, 2018 WL 11354864, at *8 (C.D. Cal. Jan. 24, 2018) (Dennis's survey was
unreliable where, in testing consumer understanding of the word "energy," the
question put in underlined text "physical activities," pointing participants to the
desired interpretation of "energy" as "physical energy"); *Strumlauf v. Starbucks*,
No. 16-cv-01306, 2018 WL 306715, at *6-7 (N.D. Cal. Jan. 5, 2018) (Dennis
designed a circular question asking how much fluid consumers expected to receive
in a 16-fluid ounce drink; the court held that Dennis's question was "leading and
lacking in reliability because, as phrased, it presumes an answer" and "tests
reading comprehension and common sense rather than the likelihood of confusion"
and further found that "by using the term '16 fluid ounces' in both the question and
the answer choice which supports plaintiffs' theory, the 'question begs its answer
[and] it is not a true indicator of the likelihood of consumer confusion'") (internal
citation omitted); *O'Bannon v. N.C.A.A.*, 7 F. Supp. 3d 955, 975-76 (N.D. Cal.
2014) ("Based on these flaws in Dr. Dennis's survey, the Court finds that it does
not provide credible evidence"), *aff'd in part and rev'd in part on other grounds*,
802 F.3d 1049 (9th Cir. 2015).

## VI.   Happy Egg's survey expert tests Plaintiffs' theory and finds no deception.

Happy Egg presented a rebuttal survey expert, Hal Poret, who conducted a double-blind, well-controlled survey on both perception and materiality and determined that there was no statistical difference between test and control groups. Specifically, Poret designed appropriate control cartons, which removed the challenged statement ("Pasture Raised") and left "FREE RANGE—access to 8 acres," then asked consumers their perception of "Pasture Raised." Poret determined that "no respondents in either [the test or the control] group gave any answer … indicating a belief that the product is certified by the AHA or HFAC…." 3-ER-406-07, 415, ¶¶ 123-128, 158.

## VII.   Plaintiffs move for class certification.

Despite testimony from the two Named Plaintiffs showing that they were not deceived, despite Morris's admission that he is not a hen welfare expert and did not conduct a scientific analysis to determine an industry standard, and despite Dennis's failure to conduct a survey to determine how consumers understood Pasture Raised, Plaintiffs moved to certify two classes.

The California Class is defined as "[a]ll natural persons who purchased at least one carton of The Happy Group, Inc.'s eggs at a retail store in California, at any time from May 1, 2019 to December 31, 2021, with a carton that stated

17

'Pasture Raised on Over 8 Acres.'" 3-ER-548, 571. The New York Class is "[a]ll natural persons who purchased at least one carton of The Happy Group, Inc.'s eggs at a retail store in New York, at any time from May 1, 2019 to December 31, 2021, with a carton that stated 'Pasture Raised on Over 8 Acres.'" 3-ER-548, 571.

Plaintiffs moved to certify the California class for claims under California's Consumer Legal Remedies Act (CLRA), Unfair Competition Law (UCL), False Advertising Law (FAL), breach of express warranty, and intentional misrepresentation, and the New York class for claims under New York's General Business Law (GBL).[7]

At the class certification stage, the predominance inquiry asks whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. Only if one or more of the central issues in the action are common to the class and can be said to predominate, then the action may be considered proper under Rule 23(b)(3). 1-ER-17 (quoting *Tyson Foods*, 577 U.S. at 453).

Given Plaintiffs' theory that pasture raised eggs have an objective definition under the Hen Welfare Standards, Plaintiffs must show that common evidence can

---

[7] The district court held that Plaintiffs "failed to proffer any developed argument with respect to" Plaintiffs' New York claims for breach of express warranty and intentional misrepresentation, and therefore denied class certification as to those claims. 1-ER-19, n.8.

prove whether the Pasture Raised claim deceived consumers. The claims under the CLRA, FAL, UCL, and GBL are governed by the same reasonable consumer test, which requires the plaintiff to show that members of the public are likely to be deceived. Plaintiffs' case turns on whether the statements were likely to deceive or mislead based on a purported industry standard. 1-ER-22. Therefore, Plaintiffs had the burden to prove that consumer deception is a common issue that predominates over individual issues. This is the center of this appeal.

## VIII. <u>The district court recognizes that common claims do not predominate as to deception, but certifies two classes anyway.</u>

On September 27, 2024, the district court issued an order certifying the California class and certifying in part the New York class. 1-ER-27. The district court found that the uncontested elements of numerosity, adequacy, and superiority were satisfied. 1-ER-13-14. The district court then found that superiority and typicality were also satisfied. 1-ER-14-17.

However, the district court found that Rule 23(b)(3)'s predominance requirement, "that the questions of law or facts common to the class members predominate over any questions affecting only individual members…" was not met. 1-ER-18 (quoting Fed R. Civ. P. 23(b)(3)).

The district court confirmed that "whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." 1-ER-19 (quoting *Erica P. John Fund, Inc. v.*

*Halliburton Co.*, 563 U.S. 804, 809 (2011)). Thus, using the reasonable consumer test under the CLRA, FAL, UCL, and GBL, "which requires the plaintiff to show that members of the public are likely to be deceived," (1-ER-19), the district court assessed whether common questions predominated for the elements of deception, materiality, and damages.

The district court recognized that for deception, Plaintiffs relied on an expert opinion, Morris, that "reasonable consumers are deceived by the *Pasture Raised* claim because it is objectively false under industry standards." 1-ER-19. The plaintiffs confirmed that their "theory depends on the existence of an industry standard." 1-ER-21. At the class certification hearing, Plaintiffs reiterated that confirmation, "stating that the Court would have to accept their expert's opinion of the industry standard and confirming they are advancing a theory that hinges on an industry standard." 1-ER-21, n.11.

But the district court concluded that Morris's opinions on consumer expectations and industry standards were not "sufficiently reliable," and excluded those opinions. 1-ER-12. In particular, the district court found that Morris's testimony confirmed that his analysis of the supposed "industry standards" and "consumer perception" was not a "comprehensive survey" but rather a "survey for [his] own personal purposes." 1-ER-9. The district court correctly concluded that "[w]hat suffices for Dr. Morris's personal purposes does not satisfy *Daubert*." 1-

ER-9. In sum, the district court found that the expert was not a survey expert, did not conduct any survey to measure consumer perception, and had no reliable methodology to opine on the so-called industry standards on which Plaintiffs' entire theory of the case relies. "The [district court] therefore exclude[d] his consumer expectations and industry standards opinions on this basis." 1-ER-12. The district court disagreed with Plaintiffs' assertion that "reasonable consumers are deceived by the Pasture Raised claim because it is objectively false under industry standards." 1-ER-19.

Next, Plaintiffs proffered Dennis's survey to argue that "the Pasture Raised claim also deceived the reasonable consumer." 3-ER-568. It was not lost on the district court that (like many of the cases in Footnote 6, *supra*) Dennis did not test Plaintiffs' theory. Instead, Dennis's survey was simply a reading test. The only relevant data that Dennis collected is that most respondents who viewed the carton containing the words "PASTURE RAISED" selected the answer choice that "these are pasture-raised eggs." This did not answer how a reasonable consumer might perceive "pasture raised" let alone whether a reasonable consumer perceived a space requirement or a certification by the AHA or HFAC.

The district court acknowledged the methodological flaws of Dennis's survey and found that Dennis's opinion "does not align with Plaintiffs' theory of liability" and therefore cannot support their burden to satisfy predominance as to

deception. *See* 1-ER-21 (mistakenly referring to "Mr. Poret's" opinion).

The district court reiterated that Plaintiffs' "theory of liability is that pasture raised eggs have an objective definition under the Hen Welfare Standards (i.e., the industry standards)" and accordingly, "Plaintiffs' theory depends on the existence of an industry standard." *See* 1-ER-21-22. Thus, "[b]ecause that industry standard anchors their theory of deception, the failure to provide survey evidence measuring deception by reference to that industry standard **precludes a finding of predominance**." 1-ER-22 (emphasis added).

At that point, the district court should have denied class certification. However, the district court failed to consider the lack of predominance due to individualized issues of deception on its ability to certify the class and went on to assess materiality and damages. The district court then certified the California Class and the New York Class in part. 1-ER-27. The district court denied certification only as to Plaintiffs' New York claims for breach of express warranty and intentional misrepresentation, because the Plaintiffs did not "meaningfully address" those claims in its briefing. 1-ER-19, n.8.

Rule 23(b)(3) mandates that the party seeking certification must show that "questions affecting only individual members" do not predominate over questions common to the class. The district court correctly found that the individualized questions of deception existed and that such individualized issues precluded a

finding of predominance. The district court erred by certifying classes—based on consumer deception claims—after finding that individualized issues precluded a finding of predominance.

## IX.   This Court grants interlocutory review.

Happy Egg timely filed a petition under Rule 23(f) for interlocutory review of the class certification decision. Interlocutory review is appropriate when "the district court's class certification decision is manifestly erroneous." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005). Happy Egg argued that it was manifestly erroneous to certify two classes where the district court expressly found that Plaintiffs' failure to demonstrate consumer deception "precludes a finding of predominance." 5-ER-788-835. This Court granted the petition on December 20, 2024. 5-ER-787.

## SUMMARY OF ARGUMENT

To certify a class, a plaintiff must prove that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Here, Plaintiffs failed to do so. The district court issued a class certification order that determined this "failure" with respect to the central issue of deception "precludes a finding of predominance" at the certification stage. 1-ER-22. Such a finding required the district court to deny the motion for class certification. Instead, the district court ignored its own finding

and certified two classes notwithstanding the Plaintiffs' "failure" to satisfy the

predominance requirement of Rule 23(b)(3). The district court's resulting class

certification was manifestly erroneous, in violation of Rule 23, and an abuse of

discretion. As such, the class certification order must be reversed.

## **ARGUMENT**

## I.      **Standard of review**

The "decision to certify a class and any particular underlying Rule 23

determination involving a discretionary determination" is reviewed for abuse of

discretion. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31

F.4th 651, 663 (9th Cir. 2022) (en banc), *cert. denied*, 2022 WL 16909174 (Nov.

14, 2022). Accordingly, the district court's determination of whether questions

affecting only individual members predominate over questions common to the

class is reviewed for abuse of discretion and is afforded deference.

The question of whether a court can disregard Rule 23(b)(3)'s predominance

requirement however is purely one of law and is therefore reviewed de novo. *B.K.

v. Snyder,* 922 F.3d 957, 965 (9th Cir. 2019) ("We review a district court's class

certification decision for abuse of discretion. An error of law is a per se abuse of

discretion. Accordingly, we first review a class certification determination for legal

error under a de novo standard, and if no legal error occurred, we will proceed to

review the decision for abuse of discretion."); *Yokoyama v. Midland Nat. Ins. Co.*

594 F.3d 1087, 1091 (9th Cir. 2010) ("[W]e accord the decisions of the district courts no deference when reviewing their determinations of questions of law.").

## II. The district court committed legal error by certifying a class after finding that Plaintiffs' evidentiary failures precluded a finding of predominance.

Rule 23 imposes "stringent requirements" for class certification. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013). The most "demanding" is Rule 23(b)(3)'s predominance requirement, which mandates that the party seeking certification must prove that "questions affecting only individual members" do not predominate over questions common to the class. *Comcast Corp.*, 569 U.S. at 33 (quoting Fed. R. Civ. P. 23(b)(3)); *see Just Film, Inc. v. Buono*, 847 F.3d 1108, 1115 (9th Cir. 2017) (same). That provision is aimed at ensuring that any putative class is "sufficiently cohesive to warrant adjudication by representation." *Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 630 (9th Cir. 2020) (citation omitted).

The Supreme Court has repeatedly stressed the importance of policing this requirement. *See Tyson Foods*, 577 U.S. at 453 (predominance inquiry "calls upon courts to give careful scrutiny" to certification); *Comcast Corp.*, 569 U.S. at 33-34 (trial court must conduct rigorous analysis under Rule 23(b)(3), and, "[i]f anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)"); *see also Mevorah v. Wells Fargo Home Mortg.*, 571 F.3d 953, 958

(9th Cir. 2009) ("Rule 23(b)(3)'s predominance and superiority requirements were added to cover cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results") (citation omitted).

Under the predominance requirement, a court may grant certification only if its rigorous analysis proves that the essential elements of the claims "can be resolved for all members of the class in a single adjudication." *Walker*, 953 F.3d at 630 (citation omitted). Accordingly, to establish predominance, questions of law or fact common to class members must predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). This requirement presupposes satisfaction of the commonality requirement of Fed. R. Civ. P. 23(a)(2), which itself tests "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1052 (9th Cir. 2015) (emphasis in original) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). But the predominance inquiry goes further and "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 577 U.S. at 453.

After resolving all disputes relevant to class certification (*see Ferreras v.*

*Am. Airlines, Inc.*, 946 F.3d 178, 183 (3d Cir. 2019)), a district court must evaluate the relationship between issues on which common evidence is presented and issues where common proof is not available. "Predominance is not, however, a matter of nose-counting. Rather, more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (citation omitted); *see also Dukes*, 564 U.S. at 350 (predominance inquiry requires assessment of how "central to each one of the claims" common versus individual issues are); *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) ("Predominance is a qualitative rather than a quantitative concept.").

Satisfying Rule 23's predominance requirement is demanding by design. *Dukes*, 564 U.S. at 350-51; *see also Comcast Corp.*, 569 U.S. at 34. Before a plaintiff can wield the sword of collective liability, it must come to federal court with a class made up of common claims by valid class members and must prove that the essential elements of the class's claims can be proven at trial with common, as opposed to individualized, evidence. In evaluating whether Rule 23(b)(3)'s predominance requirement has been satisfied, the court must thus conduct "a rigorous analysis" that "probe[s] behind the pleadings." *Comcast Corp.*, 569 U.S. at 33-34 (quoting *Dukes*, 564 U.S. at 350-51). That "rigorous

analysis" is especially important in the predominance context, as "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast Corp.*, 569 U.S. at 34. When reviewing a proposed Rule 23(b)(3) class, a court must ensure that certification would not undermine "procedural fairness" or hazard "other undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). Lastly, it is axiomatic that where predominance is not satisfied, a class cannot be certified. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008).

### A. The district court correctly found that Plaintiffs failed to establish predominance as to deception.

Plaintiffs had the burden to prove that common issues predominated over individual ones—especially the central question of deception. *See Halliburton Co.*, 563 U.S. at 809 (application of this standard "begins, of course, with the elements of the underlying cause of action"); *White v. Symetra Assigned Ben. Serv.,* 104 F.4th 1182, 1194-96 (9th Cir. 2024) (reversing district court certification order because individualized issues on central elements of plaintiffs' claim would predominate); *Williams v. Apple, Inc.*, 338 F.R.D. 629, 644 (N.D. Cal. 2021) (denying class certification where plaintiff lacked common proof of "essential elements" of the claim); *True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-cv-02219-HSG, 2021 WL 4818945, at *3 (N.D. Cal. Oct. 15, 2021) ("Where … individual inquiries are required to prove a core element of liability, courts have

found that individual questions predominate over common questions") (collecting cases).

With respect to claims brought under the UCL, CLRA, FAL, and GBL, the "central issue" in false advertising cases is "likelihood of deception." *See Moore v. Mars Petcare U.S., Inc.*, No. 16-cv-07001-MMC, 2024 WL 4336602, at *7 (N.D. Cal. Sept. 27, 2024) (denying certification where plaintiff "failed to show common questions predominate as to the central issue, likelihood of deception" because plaintiffs must prove likelihood to mislead or deceive consumers); *see also Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 777 (9th Cir. 2024) (explaining that claims under California's UCL, FAL, and CLRA center around consumer deception); *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (violations of California's consumer protection and false advertising center around consumer deception); *Orlander v. Staples, Inc.*, 802 F.3d 292, 292 (2d Cir. 2015) (the purpose of New York GBL Sections 349 and 350 is to "prohibit *deception* of consumers and false advertising") (emphasis added).

The question of deception is necessarily an individualized one where there is no "controlling definition for a key term in an alleged misstatement." *See In re 5-Hour Energy Mktg. and Sales Pracs. Litig.*, No. ML 13-2438 PSG (PLAx), 2017 WL 2559615, at *8 (C.D. Cal. June 7, 2017); *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 747 (7th Cir. 2008) (class cannot be certified where "[e]ach class

member … will have to testify to what he understands to be the meaning of a label or advertisement"); *Townsend v. Monster Bev. Corp.*, 303 F. Supp. 3d 1010, 1046 (C.D. Cal. 2018) (plaintiffs could not show the challenged statement was "likely to deceive," in part, because they failed to establish the statement had a "single common understanding of the [challenged] statement across the class"); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 508 (S.D. Cal. 2013) (denying certification because "Plaintiffs fail to sufficiently show that 'All Natural' has any kind of uniform definition among class members"); *see also White,* 104 F.4th at 1194-95 (reversing district court certification order because individualized issues on central issue of causation would predominate); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022-23 (9th Cir. 2011) ("If the misrepresentation or omission is not material as to all class members, the issue of reliance 'would vary from consumer to consumer' and the class should not be certified.") (citation omitted).

Judge Posner's decision in *Thorogood* is illustrative. In that case, the plaintiffs brought consumer fraud claims against Sears for advertising that washing machine drums are stainless steel but can cause rust stains on clothes. *Thorogood*, 547 F.3d at 747. The stainless-steel clothes dryers were not advertised as preventing rust stains on clothes, but Plaintiffs contended that reasonable consumers would understand the advertisement of stainless steel necessarily implied that they would never cause rust stains on clothes. *Id*. The district court

certified the class, but the appellate court reversed, holding that "[t]he evaluation of the class members' claims will require individual hearings. Each class member who wants to pursue relief against Sears will have to testify to what he understands to be the meaning of a label or advertisement that identifies a clothes dryer as containing a stainless-steel drum." *Thorogood*, 547 F.3d at 747.

Similarly here, Plaintiffs conceded that their theory depends on the existence of an industry standard. 1-ER-20. To tether a reasonable consumers' perception with the industry standard, Plaintiffs needed an expert to both: (a) identify the standard; and (b) confirm reasonable consumers believed it applied. But Plaintiffs did neither because the district court struck Morris and recognized that Dennis's survey did not measure deception: "even if Dr. Dennis' survey was properly designed to measure deception, it lacks the needed component from Dr. Morris, whose opinion as to industry standards have been stricken." 1-ER-21.

The district court then correctly found that Plaintiffs failed to put forth any evidence that the challenged claims "were likely to deceive or mislead based on [that] purported industry standard." 1-ER-22. The district court concluded that "[b]ecause that industry standard anchors their theory of deception, the failure to provide survey evidence measuring deception by reference to that industry standard precludes a finding of predominance." 1-ER-22.

**B.** <u>**The district court erred in certifying the classes.**</u>

Here, the district court found that Plaintiffs failed to put forth sufficient evidence of a common understanding of the challenged statements. 1-ER-22. The district court then asked whether the "common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 577 U.S. at 453. The district court correctly found that the lack of common evidence on the central issue of deception "<u>**precludes a finding of predominance**</u>." 1-ER-22 (emphasis added). That should have been the end of the decision. But instead of denying the motion, the district court then certified two classes.

Notwithstanding the district court's own conclusion that predominance was not met, binding authority confirms that where plaintiffs fail to satisfy their burden of demonstrating common issues on central elements of their claims, Rule 23(b)'s demanding inquiry of predominance is not met and a class cannot be certified. *White,* 104 F.4th at 1194-95 (reversing district court certification order because individualized issues on central elements of plaintiffs' claim would predominate); *Bowerman v. Field Asset Servs.*, 60 F.4th 459, 471 (9th Cir. 2023) ("In light of the complexity of the individualized questions and the absence of any representative evidence introduced to fill the class members' evidentiary gap, the individual issues predominate over the common questions in this case."); *Van v. LLR, Inc.*, 61

F.4th 1053, 1069 (9th Cir. 2023) (vacating class certification because the defendant "invoked an individualized issue" on a central issue in the case); *Castillo v. Bank of Am., NA*, 980 F.3d 723, 733 (9th Cir. 2020) (affirming denial of certification even where other common questions are present because plaintiff "has not provided a common method of proof to determine liability"). This analysis and finding of a lack of predominance as to consumer deception should have defeated class certification. Indeed, the Ninth Circuit has reversed orders granting certification when district courts fail to adequately consider predominance when certifying a class.

*White* is instructive. In that class action, the plaintiffs alleged that defendants fraudulently induced them to accept lump sum payments for structured annuities. *White*, 104 F.4th at 1190. Accordingly, the central element in the case was whether defendant's wrongdoing caused plaintiffs' harm. *Id*. at 1191. The district court certified the class and defendants appealed arguing that individualized issues of causation should have precluded a finding of predominance. *Id.* On appeal, plaintiffs argued that even if there were individualized issues as to causation, that should not preclude a finding of predominance because there are other elements to the claims that had common issues. *Id.* at 1193-94. This Court disagreed and reversed the district court's certification. For purposes of the predominance inquiry, the court must "begin with the elements of the underlying cause of action."

*Id*. at 1192 (citations omitted). In that case, the central question was whether defendants' action caused plaintiffs' injuries. The Court held that "individualized causation issues would predominate in this case" and thus "any common aggregations-enabling, issues are not more prevalent . . . than the non-common, aggregation-defeating, individual issues." *White*, 104 F.4th at 1194 (quoting *Tyson Foods*, 577 U.S. at 453). The *White* Court specifically held that "**even if plaintiffs demonstrate that there are common questions of law or fact with respect to [] other elements, this does not perforce establish that these questions predominate over individualized questions of causation**." *Id*. at 1193-94 (emphasis added).

Here, the district court made the same error by finding against predominance but then nevertheless certifying the classes. While a district court has "broad discretion to certify a class, its discretion must be exercised within the framework of Rule 23." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001).

Here, by ignoring its finding that Plaintiffs failed to establish predominance as to deception, the district court improperly exercised its discretion *outside* the framework of Rule 23 in certifying the classes, thereby requiring reversal under Rule 23. *See Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 725 (9th Cir. 2007) ("The district court abuses its discretion if its certification order is premised

on impermissible legal criteria.") (citing *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 479 (9th Cir. 1983)). Indeed, the district court's certification "reduce[s] Rule 23(b)(3)'s predominance requirement to a nullity." *Comcast Corp.*, 569 U.S. at 34-36. It is impossible to reconcile, much less harmonize, the district court's finding that common questions do not predominate as to deception, with its simultaneous certification of the classes. *White,* 104 F.4th at 1194-95 (district court erred in certifying class where individualized issues on the central element of the claim would predominate even when there were common questions as to other secondary elements). Predominance is not a factor that can be overridden or outweighed; it is a requirement. *C.f., Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001) ("The district court correctly applied Rule 23 and each ground advanced is independently sufficient to support the denial of class certification."). A class action cannot be maintained if predominance is not met under Rule 23. This Court should reverse because the district court's contradicting order certifying Plaintiffs' classes dramatically and improperly lowers the bar for class certification.

Accordingly, the district court erred in certifying the putative classes based on its findings of materiality and damages, despite finding that Plaintiffs failed to establish predominance as to consumer deception, an essential element, if not *the* essential element of their claims. This error, alone, requires reversal of the district court's class certification order. Without satisfying Rule 23(b)(3), which the

district court found Plaintiffs did not, the certification order cannot stand.

## <u>CONCLUSION</u>

For the foregoing reasons, Happy Egg respectfully requests that this Court reverse the district court's order granting class certification.

Dated: April 9, 2025

VENABLE LLP


By:   */s/ Amit Rana*

Amit Rana

Counsel for Defendant-Appellant
The Happy Group, Inc.

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the word limit of Fed. R. App. P. 5(c)(1) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 7989 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14 font size and Times New Roman style.

Dated: April 9, 2025     VENABLE LLP

           By: */s/ Amit Rana*

            Amit Rana

            Attorneys for Appellant
            The Happy Group, Inc.

## CERTIFICATE OF SERVICE

I certify that I electronically filed this Opening Brief with the United States Court of Appeals for the Ninth Circuit via the Court's CM/ECF system on April 9, 2025. I also caused a copy of this Opening Brief to be served via electronic mail to counsel of record for all parties to this case, listed below:

Robert Abiri
CUSTODIO & DUBEY, LLP
445 S. Figueroa Street, Suite 2520
Los Angeles, CA 90071
Telephone: (213) 593-9095
Email: abiri@cd-lawyers.com

Aubry Wand
THE WAND LAW FIRM, P.C.
100 Oceangate, Suite 1200
Long Beach, CA 90802
Telephone: (310) 590-4503
Email: awand@wandlawfirm.com

Dated: April 9, 2025                VENABLE LLP


                                By:   */s/ Amit Rana*

                                      Amit Rana

                                      Attorneys for Appellant
                                      The Happy Group, Inc.